IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BARRY ROBINSON, on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br>  v.<br><br>APPLE INC.,<br><br>       Defendant. | **CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED<br><br>Case No. |

Plaintiff Barry Robinson ("Plaintiff"), on behalf of himself and all others similarly situated, brings this class action suit for damages and equitable relief against Defendant Apple Inc. ("Defendant" or "Apple") and alleges the following based upon personal information as to allegations regarding himself and the investigation of his counsel, and on information and belief as to all other allegations:

**BACKGROUND**

1.     Plaintiff brings this case against Apple on behalf of himself and others for Apple's deceptive use of personal data from iPhones as well as additional personal Apple devices including iPads, and Apple personal computers that utilize the App Store, etc. (hereinafter Apple devices).

2.     As set forth herein, the technical detail of this case sounds complex, but it can be distilled down to a simple premise: for all of Apple's promises regarding privacy and its consumers' choice to keep their personal data private, Apple's still tracks such information even when it leads consumers to believe they are not being tracked.

3. This case is a simple case in which one of the largest technology companies in the world has inappropriately utilized its brand loyalty and consumer trust to unknowingly charge a premium for features for its products that it knew did not exist.

4. Until recently, consumers had no idea Apple was tracking their personal data to profit even when they specifically asked Apple not to.

## THE PARTIES

5. Plaintiff Barry Robinson is a resident of Bronx, New York. He has an iPhone 12 Pro Max, Macbook Air, Apple TV, and an iPad Pro. Plaintiff Robinson accesses apps from Apple's app store. He also expects Apple to honor his privacy selections on his devices. For example, after purchasing his iPhone, Plaintiff Robinson turned off the "Share iPhone Analytics" option. Meanwhile, Apple has nevertheless accessed his data while these features were turned off.

6. Defendant Apple Inc. is incorporated in California and maintains its principal place of business at One Apple Park Way, Cupertino, CA 95014.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). There are at least 100 members in the proposed class, the aggregated claims of the individual class members exceed the sum or value of $5,000,000.00 exclusive of interest and costs, and some of the members of the proposed class are citizens of states different from the Defendant.

8. Defendant has sufficient minimum contacts in New York. Defendant intentionally avails itself of the markets within New York through the promotion, sale, marketing, and distribution of its products, which renders this Court's exercise of jurisdiction necessary and proper.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district, Defendant transacts substantial business in this district, and Plaintiff resides in this district.

## FACTUAL ALLEGATIONS

10. Apple is one of the world's most popular and trusted brands.[1]

11. Accordingly, "Apple's reputation and brand allow it to charge a premium for its high-end products."[2]

12. At part of this brand, Apple has been specifically incorporating the notion that unlike many other technology companies, it protects the privacy of its users.

13. As the world and technology have evolved, consumers have learned that companies such as Apple sell their personal information for advertising revenue and as a result, the privacy of personal information on personal computing devices has become very important to consumers.

14. As a competitive advantage, Apple has maligned its competitors and overtly advertised it does not need to track users to harvest data and make money from it.

15. A description of an advertisement used by Apple is illustrative:

> Apple's most recent ad portrays the <u>amount of tracking that happens within apps</u> and on the sites you visit every day. It does it by following a man throughout the day, highlighting all the ways the different apps he uses are gathering and sharing data about it.
>
> For example, the young man starts out at a coffee shop. When he leaves, the barista follows and jumps in a rideshare with him, sharing information with the driver. When he arrives at his destination, both the driver and barista follow him in and share more information with what looks to be a bank manager. You can imagine how quickly the whole thing spirals into mayhem as each interaction results in another tracker following him around throughout his day.
>
> Of course, the idea is quite simple--the iPhone gives you a way to

---

[1] https://interbrand.com/best-global-brands/ (listing Apple as the number 1 brand for 2022).
[2] https://www.businessinsider.com/why-apple-products-are-so-expensive-iphone-macbook-2019-11

- 3 -

stop the tracking. At the end, the iPhone user is given the option not to allow tracking, and the accumulated mass of trackers disappear like a game of whack-a-mole.[3]

16. Apple has consistently doubled down on its privacy message.

17. For example, in 2019, Apple launched the marketing campaign "Privacy. That's iPhone." Apple CEO Tim Cook has repeatedly said that Apple believes privacy is a "fundamental human right," a statement it has been feature[ed] prominently. Apple also testified to a U.S. Senate committee hearing, advocating support for federal privacy legislation. Apple's vice president of software technology said that "ultimately, privacy is about living in a world where you can trust that your decisions about how your personal information is shared and used are being respected."[4]

18. Apple's website is consistent with its privacy message:



[5]

---

[3] https://www.inc.com/jason-aten/apples-new-privacy-ad-is-absurd-thats-why-its-so-brilliant.html
[4] https://www.linkedin.com/pulse/privacy-thats-iphone-other-fairy-tales-luiza-jarovsky/
[5] https://www.apple.com/privacy/

- 4 -



6

**Apple disingenuously promotes privacy while hindering its competition**

19. "In April 2021, Apple launched its iOS 14.5 and the biggest update was making targeted advertising much more difficult. Jack Raines explained:

> "Before 14.5, 3rd-party sites (read: Facebook and Google) could access your data through software development kits (SDKs) and application programming interfaces (APIs) embedded in different applications." (...) "Because Facebook and Google sign-ins were on pretty much every application, these sites had access through their APIs to a ton of consumer information. This information was then used by these sites to build a profile of "you", which would be used to share more relevant ads with you when you were on these sites."

> In practice, before iOS 14.5, it was possible, but cumbersome to opt out of API tracking - the user would have to dig into layers of settings. After iOS 14.5, any time an app wants to access user personal data, the user will see the following pop up:

---

[6] https://www.apple.com/privacy/

> Allow "Facebook" to track your activity across other companies' apps and websites?
>
> Ask App not to Track
>
> Allow

Now, only around 20% of users allow app tracking.[7]

20. The twist in all of this is that consumers had no reason to suspect Apple actually enabled this tracking feature to protect its own ad revenue at the expense of other competitors such as Facebook.

21. This is because when Apple tracks its own user, the pop-up screen regarding tracking shown above does not appear.[8]

22. Moreover, "[i]f a third-party app doesn't track across outside apps and websites, it also doesn't need to show a pop-up." So Apple makes it difficult for others to track you, but it facilitates their own tracking."[9]

23. "Apple used the privacy narrative to make you buy iPhones and be proud of it - if you care about privacy. Then it used the iOS 14.5 update (and following) to hold the competition and finally grow their ad revenue."[10]

---

[7] https://www.linkedin.com/pulse/privacy-thats-iphone-other-fairy-tales-luiza-jarovsky/
[8] https://www.linkedin.com/pulse/privacy-thats-iphone-other-fairy-tales-luiza-jarovsky/
[9] https://www.linkedin.com/pulse/privacy-thats-iphone-other-fairy-tales-luiza-jarovsky/
[10] https://www.linkedin.com/pulse/privacy-thats-iphone-other-fairy-tales-luiza-jarovsky/

24. For example, in 2019 Apple made less than $500 million in ad revenue and in 2021 it made approximately 4 billion in ad revenue.[11]

25. Apple's business strategy is apparent: cut out the competition so it can keep the advertising revenue for itself.

26. Authorities in France have caught on to some of Apple's misleading privacy practices and fined the company $8.5 million dollars.[12]

**Despite its Privacy Claims, Apple tracks its own users when it explicitly says it will not**

27. The most devastating part of this story of corporate greed is that independent researchers have determined that Apple even tracks its own consumers and their data for its benefit when it explicitly says it will not.

28. The fact is that "[t]he iPhone Analytics setting makes an explicit promise. Turn it off, and Apple says that it will 'disable the sharing of Device Analytics altogether.' However, Tommy Mysk and Talal Haj Bakry, two app developers and security researchers at the software company Mysk, took a look at the data collected by a number of Apple iPhone apps—the App Store, Apple Music, Apple TV, Books, and Stocks. They found the analytics control and other privacy settings had no obvious effect on Apple's data collection—the tracking remained the same whether iPhone Analytics was switched on or off[.]"[13]

29. Moreover, Apple's App store "appeared to harvest information about every single thing you did in real time, including what you tapped on, which apps you search for, what ads you saw, and how long you looked at a given app and how you found it. The app sent details about you

---

[11] https://www.linkedin.com/pulse/privacy-thats-iphone-other-fairy-tales-luiza-jarovsky/
[12] See https://gizmodo.com/apple-iphone-france-ads-fine-illegal-data-1849950163 ("France's data protection authority, CNIL, fined Apple €8 million (about $8.5 million) Wednesday for illegally harvesting iPhone owners' data for targeted ads without proper consent.")
[13] https://gizmodo.com/apple-iphone-analytics-tracking-even-when-off-app-store-1849757558

and your device as well, including ID numbers, what kind of phone you're using, your screen resolution, your keyboard languages, how you're connected to the internet—notably, the kind of information commonly used for device fingerprinting."[14]

30. Switching off features such as device analytics had no impact on the information Apple was sending.[15]

31. Apple's misleading privacy campaign regarding tracking of its consumers is also outside the industry norm: the independent researchers "ran similar tests in the past looking at analytics in Google Chrome and Microsoft Edge. In both of those apps, …the data isn't sent when analytics settings are turned off[.]"[16]

## CLASS ACTION ALLEGATIONS

32. Plaintiff brings this action on behalf of himself and the members of the following class (the "Nationwide Class"):

> All persons residing in the United States who, during the maximum period of time permitted by law purchased an Apple device primarily for personal, family or household purposes, and not for resale and unknowingly had their personal information tracked by Apple after they turned off the setting permitting Apple to track their information.

33. Plaintiff also "brings this action on behalf of himself and the members of the following subclass (the "New York Class"):

> All persons residing in the state of New York who, during the maximum period of time permitted by law purchased an Apple device primarily for personal, family or household purposes, and not for resale and unknowingly had their personal information tracked by Apple after they turned off the setting permitting Apple to track their information.

---

[14] https://gizmodo.com/apple-iphone-analytics-tracking-even-when-off-app-store-1849757558
[15] https://gizmodo.com/apple-iphone-analytics-tracking-even-when-off-app-store-1849757558
[16] https://gizmodo.com/apple-iphone-analytics-tracking-even-when-off-app-store-1849757558

34. Specifically excluded from this definition are: (1) Defendant, any entity in which any Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel.

35. Plaintiff reserves the right to amend these class definitions as necessary.

36. As used herein, "Class Members" shall mean and refer to the members of the classes including Plaintiff.

37. <u>Numerosity</u>: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.

38. <u>Typicality</u>: The claims of the representative Plaintiff are typical in that Plaintiff, like all Class Members, purchased Apple products that were manufactured and distributed by Defendant and subsequently tracked by Defendant when asked not to do so. Plaintiff, like all Class Members, has been damaged by Defendant's misconduct in that, *inter alia,* he has incurred damage due to purchasing Apple devices that he wouldn't have purchased had he known he was being misled regarding Defendant's privacy practices. Alternatively, Plaintiff paid a premium price he would not have paid a premium for had he known other alternatives existed that did not lie about privacy features. Furthermore, the factual basis of Defendant's misconduct is common to all Class Members and represents a common thread of fraudulent, deliberate, and negligent misconduct resulting in injury to all Class Members.

39. <u>Commonality</u>: There are numerous questions of law and fact common to Plaintiff and Class Members that predominate over any individual questions. These common legal and factual issues include the following:

   a. whether Defendant's claims regarding its devices' privacy discussed above are true, or are misleading, or reasonably likely to deceive;
   b. whether the alleged conduct constitutes violations of the laws asserted herein;
   c. whether Defendant engaged in false or misleading advertising;
   d. whether Defendant's conduct violated consumer protection laws alleged herein
   e. whether Plaintiff and Class Members were damaged by Defendant's conduct;
   f. whether Plaintiff and Class Members are entitled to damages and equitable relief; and
   g. whether Plaintiff and Class members are entitled to an award of punitive damages.

40. <u>Adequate Representation</u>: Plaintiff will fairly and adequately protect the interests of Class Members. Plaintiff has retained attorneys experienced in the prosecution of class actions, and Plaintiff intends to prosecute this action vigorously.

41. <u>Predominance and Superiority</u>: Plaintiff and Class Members have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Defendant's misconduct will continue without

remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

## CAUSES OF ACTION[17]

### COUNT ONE
### INVASION OF PRIVACY
### (on behalf of the Nationwide class).

42. Plaintiff restates and realleges the paragraphs above as if fully set forth herein.

43. Plaintiff and Class Members had a legitimate expectation of privacy with respect to their personal information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties such as Defendant.

44. Defendant owed a duty to its customers, including Plaintiff and Class Members, to ensure that the personal information it was given and which it gathered from customers remained confidential, secure, and non-utilized for a profit purpose when consumers explicitly asked that the information not be used.

45. The failure to ensure the integrity and privacy of Plaintiff's and Class Members' personal information is highly offensive to a reasonable person because Apple said it would not track such information and then tracked it any way.

46. The intrusion was into a place or thing, which was private and is entitled to be private: personal devices. Plaintiff and Class Members purchased and used Defendant's products with the expectation that their personal information would be safeguarded and not profited from when they specifically asked that it not be tracked.

---

[17] The statutes of limitation have been tolled until Plaintiff recently discovered the tracking.

47. The failure to ensure customer personal data is properly protected and remains private constitutes intentional interference with Plaintiff and Class Members' interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

48. Defendant acted with a knowing state of mind when it collected and said it would not track customer personal information, but then it did so.

49. Acting with this knowledge, Defendant had notice and knew that its misleading data harvesting policies would cause injury to Plaintiff and Class Members.

50. As a proximate result of Defendant's acts and omissions, Plaintiff and Class Members' privacy was violated causing Plaintiff and Class Members to suffer damages.

51. Unless and until enjoined, and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members.

52. Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members.

### COUNT TWO
### BREACH OF IMPLIED CONTRACT
### (On behalf of Nationwide class)

53. Plaintiff restates and realleges the paragraphs above as if fully set forth herein.

54. Defendant sold its devices to Plaintiff and Class Members for which it received a benefit in the form of monetary payment.

55. Defendant has acknowledged the benefit and accepted or retained the benefit conferred.

56. Plaintiff and Class Members paid money to Defendant in exchange for devices and services, along with Defendant's promise to protect their personal information from unauthorized disclosure.

57. Implicit in the agreement between Plaintiff and Class Members and the Defendant was the latter's obligation to not track consumers who asked not to be tracked.

58. Without such implied contracts, Plaintiff and Class Members would not have purchased their devices from Defendant or would have paid less for them.

59. Plaintiff and Class Members fully performed their obligations under the implied contract with Defendant, however, Defendant did not.

60. Defendant breached the implied contracts with Plaintiff and Class Members by tracking Class Members when they specifically asked not to be tracked. These circumstances are such that it would be inequitable for Defendant to retain the benefits received.

61. As a direct and proximate result of Defendant's breach of its implied contracts with Plaintiff and Class Members, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to the premium they paid for the Apple devices not to be tracked.

## COUNT THREE
## UNJUST ENRICHMENT[18]
### (On behalf of the Nationwide class)

62. Plaintiff restates and realleges the paragraphs above as if fully set forth herein.

63. As the intended and expected result of its conscious wrongdoing, Defendant has profited and benefited from the purchase of its devices by Plaintiff and the Class Members.

64. Defendant has voluntarily accepted and retained these profits and benefits, with full knowledge and awareness that, as a result of its misconduct, Plaintiff and Class Members did not

---

[18] This cause of action is plead in the alternative to the breach of contract claims.

receive a product of the quality, nature, fitness, or value that had been represented by Defendant, and that reasonable consumers expected.

65. Defendant has been unjustly enriched by its fraudulent and deceptive withholding of benefits to Plaintiff and the Class Members at the expense of these parties.

66. Equity and good conscience militate against permitting Defendant to retain these profits and benefits.

67. As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and the Class suffered injury and seek an order directing Defendant's disgorgement and the return to Plaintiff and the Class Members of the amount each Class Member improperly paid to Defendant.

## COUNT FOUR
## VIOLATIONS OF NEW YORK GBL § 349
### (On Behalf of Plaintiff and New York Class Members)

68. Plaintiff restates and realleges the paragraphs above as if fully set forth herein.

69. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

70. The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Class Members seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining them from inaccurately describing, labeling, marketing, and promoting the Products and from charging consumers monies in the future.

71. Defendant misleadingly, inaccurately, and deceptively advertise and market the devices to consumers.

72. Defendant's improper consumer-oriented conduct (including representing that its devices allow users to select settings that would stop Defendant from collecting and tracking user's

personal, private data) is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Class Members to purchase and pay a premium for Defendant's devices and to use the devices when they otherwise would not have. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

73. Plaintiff and the New York Class Members have been injured inasmuch as they paid a premium for devices that (contrary to Defendant's representation) do not allow users to select settings that would stop Defendant from collecting and tracking user's personal, private data. Accordingly, Plaintiff and the New York Class Members received less than what they bargained and/or paid for.

74. Defendant's advertising and Products' labeling induced Plaintiff and the New York Class Members to buy Defendant's devices and to pay a premium price for them.

75. Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Class Members have been damaged thereby.

76. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Class Members are entitled to monetary, statutory damages of $50 per unit sold, compensatory, treble and punitive damages, injunctive relief, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**COUNT FIVE**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff and the New York Class Members)**

77. Plaintiff restates and realleges the paragraphs above as if fully set forth herein.

78. N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

False advertising in the conduct of any business, trade, or commerce

or in the furnishing of any service in this state is hereby declared unlawful.

79. N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

80. Defendant's labeling and advertisements contain untrue and materially misleading statements concerning Defendant's devices inasmuch as they misrepresent that the devices allow users to select settings that would stop Defendant from collecting and tracking user's personal, private data when such settings do not function in this manner.

81. Plaintiff and the New York Class Members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and paid a premium for the devices which (contrary to Defendant's representation) do not allow users to select settings that would stop Defendant from collecting and tracking user's personal, private data. Accordingly, Plaintiff and the New York Class Members received less than what they bargained and/or paid for.

82. Defendant's advertising induced Plaintiff and the New York Class Members to buy Defendant's devices.

83. Defendant made its untrue and/or misleading statement and representation willfully, wantonly, and with reckless disregard for the truth.

84. Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

85. Defendant made the material misrepresentation described in this Complaint in Defendant's advertising and within the devices.

86. Defendant's material misrepresentation was substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the devices were and continue to be exposed to Defendant's material misrepresentation.

87. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Class Members are entitled to monetary, statutory damages of $500 per unit sold, compensatory, treble and punitive damages, injunctive relief, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seek a judgment against Defendant, as follows:

a. For an order certifying the Nationwide and New York Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and New York Class and Plaintiff's attorneys as Class Counsel;

b. For an order declaring that Defendant's conduct violated the statutes referenced herein;

c. For an order finding in favor of Plaintiff, Class, and Subclasses on all counts asserted herein;

d. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e. For prejudgment interest on all amounts awarded;

  f. For an order of equitable monetary relief;

  g. For injunctive relief as pleaded or as the Court may deem proper; and

  h. For an order awarding Plaintiff, the Class, and Subclasses their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: February 2, 2023

          **THE SULTZER LAW GROUP P.C.**

          By: Jason P. Sultzer /s/
          _____
          Jason P. Sultzer, Esq.
          Daniel Markowitz, Esq.
          85 Civic Center Plaza, Suite 200
          Poughkeepsie, NY 12601
          Tel: (845) 483-7100
          Fax: (888) 749-7747
          sultzerj@thesultzerlawgroup.com
          liparij@thesultzerlawgroup.com
          markowitzd@thesultzerlawgroup.com

          Charles E. Schaffer, Esq.
          David C. Magagna Jr., Esq.
          LEVIN SEDRAN & BERMAN
          510 Walnut Street, Suite 500
          Philadelphia, PA 19106
          Tel: 215-592-1500
          cschaffer@lfsblaw.com
          dmagagna@lfsblaw.com

          Jeffrey K. Brown, Esq.
          LEEDS BROWN LAW, P.C.
          1 Old Country Rd., Suite 347
          Carle Place, NY 11514
          Tel: (516) 873-9550
          jbrown@leedsbrownlaw.com

          *Attorneys for Plaintiff and the Proposed Classes*